Louise **VANATTA**, Appellee,

v.

David **TOMLINSON** d/b/a Lebanon Sunshine Laundry, and Nationwide Insurance Company, Appellants.

No. 88–63–I.

Supreme Court of Tennessee, at Nashville.

July 24, 1989.

Stephen K. Heard, Martin D. Holmes, Stewart, Estes and Donnell, Nashville, for appellants.

William E. Farmer, Lebanon, for appellee.

## OPINION

COOPER, Justice.

In this worker's compensation case, the parties stipulated that appellee, Louise Vanatta, was injured on September 17, 1986, in an accident that arose out of and in the course of her employment as a laundry attendant. After a protracted series of hearings, the trial court awarded Mrs. Vanatta temporary total benefits for the period of September 17, 1986, to December 15, 1987, and benefits for a permanent partial disability of eighty-five percent to the body as a whole. Appellants insist that the termination date of the temporary total disability benefits is not supported by the evidence. They also insist there is no causal connection between appellee's permanent disability and the on-the-job accident of September 17, 1986, and that, in any event, the percentage of permanent partial disability is not supported by the evidence. Appellee insists that the trial court erred in failing to find that she is totally and permanently disabled.

On September 17, 1986, appellee, then 58 years of age, was employed as a laundry attendant at the Lebanon Sunshine Laundry, a full-service and coin operated laundromat in Lebanon, Tennessee. Her duties consisted of general clean-up and maintenance of the machines and floor. In addition, she was required to sort, wash, dry, and fold laundry of customers who left their laundry to be washed by the attendant. In the performance of these duties, appellee slipped in water from one of the coin operated machines and fell heavily to the concrete floor. Appellee's principal complaints were of an injury to her right elbow, right hip, and low back. Her injuries were reported to her employer, who instructed her to get medical treatment. In the stipulation entered at trial, the parties agreed that the appellants had paid $13,057.01 in medical expenses for treat-

ment of appellee's injuries. They also stipulated that appellee was paid temporary total disability benefits for the period from September 18, 1986, through December 15, 1987.

The principal treating physicians were Dr. Vaughan A. Allen and Dr. Willard M. West. Dr. Allen treated appellee for an ulnar nerve injury which was determined to be the source of the complaints with respect to the right arm. Dr. West concentrated on treating the hip and low back complaints.

Taking first the ulnar nerve injury, appellee testified that she had no ulnar nerve problem before hitting her right elbow on the concrete floor of the laundry when she fell on September 17, 1986. This testimony was buttressed somewhat by her employer, who testified that appellee was seldom, if ever, absent from work and that she performed all the tasks required of her.

Dr. Thomas Puryear, appellee's family physician, testified that his office notes indicated that in 1984 appellee had complained of a tingling in the right hand and some weakness of her grip, which were indicative to him of ulnar neuritis. The treatment prescribed at the time were injections of cortisone.

Dr. Allen testified that on examination of appellee after her fall, he found objective signs of a significant ulnar nerve entrapment at the elbow, which was compatible with the history of falling and hitting the elbow on the floor. He also testified that if appellee had had any ulnar nerve problem before her fall, "certainly the fall could acutely exacerbate the problem." Treatment of the injury consisted first of medication, then surgery "to move the nerve from behind the elbow to in front of the elbow." After the surgery, appellee regained strength in the right hand, and had a diminution in the loss of sensation. According to Dr. Allen, appellee reached maximum improvement by May 1, 1987. On inquiry, Dr. Allen stated that so far as the nerve injury was concerned, appellee could then return to work but should not lift over fifty pounds under any circumstances, or over thirty pounds repetitively. Dr. Allen

testified that as the result of the nerve injury and surgery, appellee had lost eight percent of the function of the right arm, which translated under AMA guidelines to two percent permanent partial disability to the body as a whole. It should also be noted that while Dr. Allen did not treat appellee's complaints of neck and back pain, he did find objective signs of injury to the back in the course of his initial examination of appellee.

Dr. Willard West treated appellee for problems with her left leg and the related structure of the hip and for low back pain. The treatment consisted primarily of pain medications, and injections of steroids in the hip area and the lower back area. According to Dr. West, the injections "seemed to help quite a bit with the pain and stiffness in the hip and leg," but that she was still complaining of low back pain and hip pain. Dr. West opined when he examined appellee on September 23, 1987, she had a "ten percent disability to the left lower extremity, with a four percent disability to the body as a whole," as the result of the injury she sustained in the fall on September 17, 1986. Dr. West also expressed the opinion that appellee was "essentially unemployable for most jobs that require any kind of manual labor," especially those that would require "heavy lifting or straining such as would be found in a laundry." Dr. West went on to say that appellee would have to take pain medications in the future, and probably would require continued injections of cortisone in the hip joint for the relief of pain.

Appellee testified that before she was injured in the on-the-job accident of September 17, 1986, she consistently worked eight to ten hours a day at the laundry, doing any task required of her as a laundry attendant. She also testified that she did all her housework. She further testified that she injured her back, hip, leg, and right arm in the fall. The injury to her right arm improved after the surgery, but that she still has weakness and some loss of sensation in her right hand. She also stated that she continues to have pain in the low back and hip area, and is unable to

stoop or lift anything, and that she can not do any housework that requires stooping, bending, twisting, or lifting. She is still taking injections for pain in the hip area.

Appellee's adult children testified that they had noticed that appellee did not lift any objects, not even grandchildren, and did not do her housework as she had in the past.

Dr. George Copple was called by appellee to testify as a vocational expert. Tests administered by him revealed that appellee is able to read and to do mathematical computations only at the fifth grade level, which is compatible with the fact that she quit school in 1941 in the sixth grade. Appellee's work experience has been limited to manual tasks, and for the ten years prior to her injury was that of a laundry attendant. Predicated upon the tests, work experience, age of appellee and the medical problems described in the testimony of Drs. Allen and West, Dr. Copple testified that appellee is essentially unemployable for most jobs that require any kind of manual labor. Dr. Copple rated appellee's vocational disability at one hundred percent.

As heretofore noted, the trial judge concluded from all the evidence that plaintiff has a permanent partial disability of eighty-five percent to the body as the whole as the result of the on-the-job injury of September, 1986. Neither party to this action is satisfied with this finding. Appellants insist it is excessive, pointing out that the disability awarded is fourteen times the anatomical disability rating by the treating physicians. Appellee insists that the disability award should be one hundred percent to the body as a whole. The anatomical disability ratings given by the physicians, though important, are not controlling. Once permanent anatomical disability has been established by competent medical testimony, the trial judge is called upon to consider other factors that have a bearing on the worker's ability to earn wages on the open labor market, such as, past work history, job skills and training, education, and job opportunities for those with the disability of the worker in question. *See Bennett v. Howard Johnson Motor Lodge,*

714 S.W.2d 273 (Tenn.1986); *Holder v. Liberty Mutual Insurance Company,* 587 S.W.2d 372 (Tenn.1979). On considering these factors in the light of the evidence in this case, we can not say the evidence preponderates against the finding of the trial judge that appellee has a permanent partial disability of eighty-five percent to the body as a whole.

While not questioning the factors to be considered in the determination of the disability of a worker under the worker's compensation act, appellants do insist that the trial judge and this Court should not give much, if any, weight to the testimony of Dr. Copple. They emphasize that Dr. Copple only examined appellee on one occasion, and that he is called upon by plaintiffs to testify much more often than he is called upon by defendants. They further argue that his testimony is suspect as it was predicated in part upon the medical depositions of Drs. Allen and West, which appellants insist were predicated upon an inaccurate and incomplete medical history. These same arguments were made to the trial judge at the time he heard the testimony of Dr. Copple. We have considered the evidence in the light of these arguments by appellants and the fact that the trial judge was in the better position to pass on the credibility of Dr. Copple, who testified in person, and find no basis for the trial court, or for this Court, to disregard or discount the testimony of Dr. Copple.

Appellants also insist that the anatomical disability of appellee is to scheduled members only and that any disability award should be in accord with the statutory schedule for injury to an arm and a leg, not to the body as a whole. Appellee's injury was not confined to the right arm and right leg. She also suffered an injury to the right hip joint and to the low back, as the result of which she is restricted in lifting, stooping, and twisting, and will require future medical treatment by injections in the hip joint on exacerbation of pain. This condition is permanent, though no percentage of disability was assigned to the back or hip injury per se. As we view the evidence, under these circumstances ap-

pellee is entitled to benefits for permanent disability to the body as a whole.

 Appellants also question the determination by the trial court that appellants are liable for temporary total disability benefits through December 15, 1987. T.C.A. 50-6-207(3)(A)(i) specifically provides that the injured employee shall receive compensation "for the period of time during which he suffers temporary total disability on account of the injury,...." The obvious purpose served by such benefits is to allow for

> the healing period during which the employee is totally prevented from working. Under the rule ... the temporary total disability is cut off when the workman has reached his maximum recovery, at which point either permanent total or permanent partial disability commences,....

*Gluck Bros., Inc. v. Coffey,* 222 Tenn. 6, 13-14, 431 S.W.2d 756, 759 (1968). Temporary total disability benefits then "are terminated either by the ability to return to work or attainment of maximum recovery." *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn.1978). *See also Roberson v. Loretto Casket Co.,* 722 S.W.2d 380 (Tenn. 1986). In this case, the evidence shows that appellee reached maximum medical recovery no later than September 23, 1987. Under the worker's compensation statute and the above authorities, September 23, 1987, is the correct termination date of the temporary total disability benefits, and appellants are entitled to credit for any temporary total disability payments made after that date.

Accordingly, the judgment of the trial court is modified to provide for payments of temporary total disability benefits through September 23, 1987, and to give credit to appellants for any temporary total disability payments made after that date. As modified, the judgment of the trial court is affirmed. The cause is remanded to the trial court for a determination of the credit due appellants for overpayment of temporary total disability benefits, and for enforcement of the judgment, as modified. Costs are adjudged against appellants.

Appellee's motion for frivolous appeal damages is denied.

DROWOTA, C.J., and FONES, HARBISON, and O'BRIEN, JJ., concur.