# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON
_____

|  |  |  |
|---|---|---|
| **JOHN BROWN,** | ) | Shelby County Circuit Court |
|  | ) | No. 45356 T.D. |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C. A. No. 02A01-9512-CV-00284 |
|  | ) |  |
| **COUNTY OF SHELBY,** | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

**FILED**

**Dec. 2, 1997**

Cecil Crowson, Jr.
**Appellate Court Clerk**

From the Circuit Court of Shelby County at Memphis.
**Honorable Irving M. Strauch, Judge by Designation**

**Alan Bryant Chambers**,
**Jeff A. Crow, Jr.**
CHAMBERS, CROW, DURHAM & HOLTON, Memphis, Tennessee
Attorney for Plaintiff/Appellant.

**Carroll C. Johnson**, Memphis, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**LILLARD, J.** : (Concurs)

This appeal concerns an action by the appellant, John Brown (Brown), to recover workers' compensation benefits from his employer, the appellee, County of Shelby (County), who has not elected to come within the provisions of the Workers' Compensation Law. Brown alleges that he sustained on-the-job injuries while employed by the County as a counselor at the Shelby County Jail. The record reflects that the County has implemented its own policy whereby it compensates its employees for on-the-job injuries and relies to some extent on the Workers' Compensation Act as a guide in determining benefits. At trial, it was established that under said policy, the County had paid Brown's temporary disability benefits and that Brown sought only permanent disability benefits and the medical expenses incurred from Dr. John P. Howser. The trial court awarded a permanent partial disability of 7% to the body as a whole and entered a judgment for Brown in the amount of $5,863.68. No award was made for Dr. Howser's expenses. Brown appeals, identifying the issues for review as follows:

1. Whether the Court fixed the percentage of disability to properly compensate for vocational disability.

2. Whether the Court properly fixed the anatomical disability.

3. Whether the Court erred in declining [to] award a medical bill.

For reasons hereinafter expressed, we affirm.

Brown was 52 years old at the time of trial. In 1986, he was employed with the Shelby County Sheriff's Department as a deputy jailer. He became a counselor in 1987. He worked a daily shift of 8 to 12 hours. His duties were "to work with the inmates[,] to handle the inmates' problems relating to court information, family problems, . . . to try to deal with that inmate in terms of his period of stay within the [jail]." He normally visited the inmates on the floors where they were housed, "going from pod to pod." A one-on-one conference with an inmate occurred in Brown's office only if an inmate had a problem that should not be addressed before the total jail population.

At issue here are two separate incidents from which Brown alleges to have sustained work-related injury, necessitating permanent disability benefits. The proof shows that the first

occurred on November 8, 1988 when Brown fell through a ceiling onto a concrete floor 10 to 12 feet below, after discovering evidence of contraband at the jail. Brown testified that he endured injuries to his leg, including a "crushed" ankle, and back. The second incident occurred on April 16, 1991 when Brown slipped and fell on some soup while at work.

After the 1988 incident, Brown returned to work in September 1990. According to Brown, his return was with the restrictions that he work only four hours per day and that the inmates be brought to his office for counseling. Brown stated that the restrictions, however, were never enforced and that his duties remained the same. He said that he was never medically released to return to full duty. Brown was also off from work from August 1992 to April 1993. He states that he was "asked to retire" in 1993 and did so in July.

Brown's medical history includes a back injury (ruptured disc) from an automobile accident in April 1969, for which he underwent surgery two years later. He returned to work in 1972 and was employed at various occupations, mostly counseling positions, until the 1988 incident. In 1987, Brown was treated by Dr. Howser for 2 to 3 months for a "flare-up" in his back. Brown testified that he was experiencing no back problems from last seeing Howser in 1987 until the 1988 episode.

Brown has a bachelor's degree in business education and attended classes for an additional year and a half working toward obtaining a master's degree in theology. He has been a minister with the Methodist Church since 1972 and at the time of trial was a "supply minister" (substitute pastor) at a church. Brown identified his main "vocation" as that of minister and his "avocation" as that of counselor with the sheriff's department.

He described his present physical ailments as "severe problems with [his] ankle or . . . leg and likewise with [his] back." He stated that he is not able to work as a counselor today because he does "not have the same physical stamina that [he] had prior to 1988. . . . [He cannot] stand over a great deal of . . . time. [He has] a problem sitting . . . . a very serious problem, with pain . . . ." He continued, "I can't physically do anything . . . . I am crippled."

Pam Savage, an employee with the County's Risk Management Department which handles on-the-job injury claims, testified regarding the County's policy of compensating its employees injured on-the-job. She stated that under such policy, permanent disability is negotiated "based upon the workers' compensation guidelines." Savage said the County paid all of Brown's medical bills with the exception of Dr. Howser, for which the County denies responsiblity. She explained that the County never approved such care and Brown was informed that the treatment was not authorized.

Deborah Denny, an employee of the Shelby County Sheriff's Department, Jail Division, stated that Brown was under her supervision upon returning to work after the 1988 injury. She said that Brown initially worked an 8 hour shift until she was informed by his rehabilitation nurse, in December 1990, that he was limited to a four hour work schedule. According to Denny, Brown's schedule was adjusted accordingly and the inmates he counseled were routed to his office. Denny said that although it had been arranged so that Brown never had to go into the pods, she "chided" him at one point for doing so and expressed her concern regarding his "excessive walking."

Medical expert testimony was given, by deposition, from three physicians who treated Brown for the injuries at issue. Dr. Thomas Russell first saw Brown at the hospital emergency room for the November 1988 injuries. Russell said that Brown's "main problem" was a "deformity of his leg" which x-rays indicated was a comminuted fracture just above the ankle and a broken fibula. Russell performed two surgeries on the leg: the first on the day following the accident and the second, a corrective osteotomy, in February 1990. Russell consulted with Dr. George Wood regarding Brown's complaint of back pain. He said that Dr. Woods' concluded that Brown's back pain was "an exacerbation of a preexisting condition" and that he sustained no new impairment to his back. Russell said that Brown reached maximum medical improvement regarding his leg in November 1991. He assessed a permanent physical impairment of 8% to the leg and recommended that Brown forgo occupations requiring any type climbing or squatting, but believed sedentary occupation "would be satisfactory."

Dr. Riley Jones testified that he first began treating Brown for back and leg injuries

in September 1989 after the County requested an independent medical examination. The initial examination revealed no recurrent ruptured disc. Jones' diagnosis was a post-laminectomy syndrome exacerbated by the fall and psychological overlay. Jones believed the "exacerbation" was a "sprained" back as a result of the fall through the ceiling, but that "some of the other things that [Brown] was complaining about . . . didn't all go together." He stated that Brown "actively participate[d]" in the examination, which he defined as "overdoing all of his exam" or "basically acting." The results of a differential spinal test were "non-physiologic," indicating that the pain he was complaining of was "not coming from his back." Subsequent examinations revealed positive "Waddel's," or symptom magnification signs. This result, according to Jones, "runs up red flags." In September 1990, Jones recommended a reduction in Brown's work schedule to 4 hours per day.

On April 23, 1991, Jones saw Brown for pain in his right leg and hip. Tests revealed a new injury, an acute radiculopathy or nerve irritation, which Jones attributed to the April 1991 incident. Jones testified that Brown reached maximum medical improvement on September 17, 1991. He assessed a permanent-partial impairment to the lower extremity (for the loss of motion to the ankle) of 15% and a 5% impairment to the body as a whole for the radiculopathy. Jones recommended sedentary work.

Jones further testified:

Q.     . . . insofar as the S1 radiculopathy, the 5 percent permanent partial impairment, how do you make the distinction between April [16], 1991, . . . as opposed to the fall of 1988?

A.     Because he didn't have the S1 radiculopathy on numerous [EMGs] before.

       . . . .

A.     . . . . So you have . . . a date of a new injury. He has scar, . . . . . He twisted and stretched and what he did was pulled the scar that was around the S1 nerve root.
       . . . he had another EMG when I saw him in August of 1992 . . . . He still had his S1 radiculopathy. So for the period of time from April to August, it was still there. And so we have to assume at that point there's no change in the potentials, that it's going to be chronic. And that's why he was given a 5 percent.

       . . . .

Q.     . . . isn't it true that Mr. Brown complained of pain almost

consistently for three or, . . . four years following this fall back in 1988?

A.      . . . . His examination by everyone was inconsistent. . . . It's hard, you know, if we had ever had a consistent exam where we could pinpoint something and Lord knows he was worked up, . . . forty different ways. . . .  And nobody had found anything of any consequence with this gentleman.

      Now, you give a 5 percent out of the rating for pain. . . .  I've got a cause for his pain after he fell this last time.

. . . .

A.      . . . . The only consistency was he complained of pain.  But his exam, . . . was off the wall.  There was nothing there that anybody would say was physiologic. . . .  He's overdoing it so much, I can't say there's anything wrong with him.  But now, at least with the stretch injury and the radiculopathy, I can say he does have this problem.  And so we gave him that for the pain that he has from the S1 radiculopathy, . . . .

Jones additionally related that Brown "moves very well when he feels that he's unobserved . . . he does have pain . . . but he has got pretty good motion, and he's capable of substantially more than he is willing to do."  When asked about the pain medication he prescribed throughout Brown's period of treatment, Jones replied, "[t]his gentleman had enough pain in his leg from his injury to account for a lot of problems."  Jones declared that at no time during his treatment of Brown did he believe any type back surgery necessary.  After reviewing Brown's job description with the sheriff's department, Jones believed Brown capable of doing this work on an 8 hour per day basis, as of February 1994.

Dr. John Howser began treating Brown for the injuries at issue in July 1992.  A back examination revealed a restricted range of motion, paravertebral muscle spasms and pain.  Howser performed back surgery in July 1993 after a myelogram indicated a defect and possible large lumbar disc.  The surgery revealed the defect to be a large spur.  A subsequent myelogram showed that the defect was gone, indicating "an excellent result from his surgery."  According to Howser, Brown's back problems and the radiculopathy were caused by his fall in November 1988.  Howser assessed a permanent impairment of 10% to the body as a whole due to Brown's back problem and subsequent surgery.  He declared that Brown was "not able to work at all" because of his pain.  His conclusion in this respect was based on no objective finding, but on Brown's own descriptions of his symptoms and pain.

The surgery by Dr. Howser resulted in Dr. Jones assessing an additional 2% permanent impairment to the body as a whole, in accordance with the AMA Guides. Jones, however, recommended against the surgery and professed that it did not "accomplish[] anything." He stated that Brown "still has . . . the very same condition [as] before, . . . ."

The trial court ruled from the bench as follows:

> [T]he plaintiff in this case is a male, . . . age 53 years, and he is a slight individual, but the working of a counselor and preacher doesn't require any strong work. He can do that kind of work.
>
> I read the depositions of Dr. Jones, Russell, Howser, and it seems that after the first disability that the doctors found an impairment to his leg, and the Court is of the opinion that that impairment is 5% of the body as a whole.
>
> Now, the 1991, incident, he slipped and fell and had some other disability. Dr. Jones says in that deposition his operation by Dr. Howser gives him a 2% additional permanent disability, and so I'm of the opinion that the plaintiff in this case has a 7% permanent disability to the body as a whole.

Our review of this matter is *de novo* upon the record accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Rule 13(d) T.R.A.P. In the typical workers' compensation case, the permanence of an injury must be established by expert medical testimony. *Worthington v. Modine Mfg. Co.*, 798 S.W.2d 232, 232 (Tenn. 1990). In this respect, the case before us is no different. Here, the three treating physicians are in agreement that Brown sustained permanent back and leg injuries as a result of the two work related incidents, although they assessed varying anatomical impairment ratings. Brown contends that the proof requires an increase in the anatomical disability rating based on his back problems and "persistent report of pain."

Though the anatomical disability ratings by the physicians are important, they are not controlling. *See Vanatta v. Tomlinson*, 774 S.W.2d 921, 924 (Tenn. 1989). Once a permanent anatomical disability has been established by competent medical testimony, the trial judge is to consider other factors which are relevant to the worker's ability to earn wages on the open labor market, such as past work history, job skills and training, education and the job opportunities for

those with that worker's particular disability. *Vanatta*, 774 S.W.2d at 924.

Brown asserts that application of the foregoing factors warrants a higher disability rating than 7%. Dr. Howser's testimony indicates Brown endures excruciating pain, rendering him unable to do any work. The testimonies of Drs. Russell and Jones are to the contrary. Clearly, the trial judge accepted the testimonies of the latter as Brown was determined partially disabled. We find that there is evidence in this record from which to conclude that Brown is capable of sedentary type employment. He is 52 years old and well educated. He has held various employment positions during his adult years, most in the area of counseling. Although he no longer works for the sheriff's department, we believe his level of education and past employment history should assist in his ability to find the type work for which the record indicates he is capable. It is proper under Tennessee law to allow benefits on the basis of a percentage of the body as a whole where an injury is to more than one member, one of which is scheduled (i.e. leg) and the other which is not scheduled (i.e. back). *Kellerman v. Food Lion, Inc.*, 929 S.W.2d 333, 336 (Tenn. 1996). When considering the relevant factors espoused in *Vanatta*, we find a preponderance of the evidence to support the trial court's award of a permanent partial disability of 7% to the body as a whole.

The final issue before us is whether the trial court erred in failing to award the medical expenses of Dr. Howser. The County disputes owing these costs, claiming the unauthorization of the Doctor's treatment of which Brown was "specifically" informed. The County also contends that the treatment was unnecessary. Under the Worker's Compensation Act, upon which the County relies as a guide, an employer is required to provide an employee who has sustained a compensable injury with medical treatment that "may be reasonably required." *Baggett v. Jay Garment Co.*, 826 S.W.2d 437, 439 (Tenn. 1992); T.C.A. § 50-6-204(a)(1)). *Baggett* holds that the burden is on the employee to show the "necessity and reasonableness" of those charges incurred for treatment by providers who are not designated or otherwise approved by the employer. *Baggett*, 826 S.W.2d at 439. Even without the County's election to come under the Act's provisions, it is certainly reasonable to conclude that the County should only be liable for the costs of the medical care received by its employee that is reasonable and necessary to address his work related injury.

The testimony on this issue is disputed. The two physicians treating Brown for his back problems were Jones, who saw Brown at the County's request, and Howser. Their treatment resulted in different diagnoses, with Jones concluding that back surgery was not necessary and Howser deducing the contrary. When medical testimony differs, it is within the trial court's discretion to determine which expert testimony to accept. *Kellerman*, 929 S.W.2d at 325. In light of its decision, the trial court clearly accepted the opinion of Dr. Jones. After review of the record, we find no abuse of discretion by the trial court in accepting this testimony. Therefore, as the medical expenses for Dr. Howser's treatment were not shown necessary and reasonable, we conclude that the trial court did not err in failing to award these costs.

It results that the judgment of the trial court is affirmed and this cause remanded for any further proceedings necessary and herewith consistent. Costs are taxed to John Brown, for which execution may issue if necessary.

_____
FARMER, J.


_____
HIGHERS, J. (Concurs)


_____
LILLARD, J. (Concurs)