Joyce K. RILEY, Plaintiff-Appellee,

v.

AETNA CASUALTY & SURETY, et al.,
Defendants-Appellants.

Supreme Court of Tennessee,
at Nashville.

April 27, 1987.

William C. Moody, John L. Whitfield, Jr., Nashville, for defendants-appellants.

Thomas Travaglini, Richard Norman, Nashville, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

In this Worker's Compensation appeal, three issues have been raised by Defendants, Aetna Casualty & Surety and Collins & Aikman, the employer-insured. The trial court awarded Plaintiff, Joyce K. Riley, temporary total disability benefits for the period of July 27, 1984 to March 1, 1986, plus all medical expenses, and determined that Plaintiff retained a 25% permanent partial disability to the body as a whole. The issues are: (1) whether Plaintiff complied with the notice requirements of T.C.A. § 50-6-201, (2) whether the period of eligibility for temporary total disability is supported by material evidence, and (3) whether the disability suffered by Plaintiff should be limited to compensation for an injury to a scheduled member.

The material evidence supporting the trial court's decision reveals that Plaintiff began working for Defendant Collins & Aikman in late 1983. She performed repetitive, manual labor requiring her to stand in one place for extended periods on a hard concrete floor. She worked 40 hours a week plus overtime in many weeks of 10 to 20 additional hours. In the Spring of 1984, she began experiencing pain in her left heel. When this pain persisted, she informed her supervisor several times that she was having problems with her foot. The pain gradually increased. Plaintiff was not aware that her problem could be caused by standing on a hard surface for long periods and attributed the symptoms to other incidents or accidents around her home. On two occasions, because of the severity of the pain, she sought relief by going to Baptist Hospital Emergency Room in Nashville. At her second visit to the emergency room, she was informed that she had heel spurs and was referred for treatment to Dr. J. Wills Oglesby, an orthopedic specialist. She first saw Dr. Oglesby on July 3, 1984. He diagnosed Plaintiff's condition as plantar fasciitis, which caused heel spurs to develop when the fascia of her left foot was subjected to a repetitive trauma.

When Plaintiff informed her supervisor of the nature of the problem, the supervisor remarked that women in another of Defendant's plants had experienced similar problems with their feet due to standing on a hard surface for long periods. She was permitted to go to the company nurse about her foot. She took mild analgesics for the pain. No accident report was made and the Defendant had her complete group insurance claim forms. A piece of carpet was placed at Plaintiff's work station by her employer to help relieve the pressure on her foot. The problem, nevertheless, continued to worsen. Dr. Oglesby administered a conservative course of treatment throughout July, 1984, but it did not provide her any relief.

On August 8, 1984, after Plaintiff began developing a permanent limp, Dr. Oglesby performed surgery on Plaintiff's foot to remove the spurs. Subsequently, she was granted several leaves of absence to permit her to recover. Dr. Oglesby continued to see Plaintiff until February 25, 1985. At that time, he believed she had reached maximum medical improvement and assessed a 20% permanent anatomical impairment to her lower limb. He released Plaintiff for

work with the restriction that she perform only sedentary work. While she was still under Dr. Oglesby's care and apparently because she was still experiencing severe pain and had some disagreement about her treatment, Plaintiff sought a second opinion from Dr. Alan S. Henson, an orthopedic surgeon, on November 19, 1984. She was still not able to return to work during this time.

Dr. Henson found that the spurs had not been completely removed and prescribed additional conservative treatment, which continued over an extended period but without success. Dr. Henson operated on Plaintiff, her second surgery to correct the problem, in January, 1986. Following this surgery she began to improve and experienced lessening pain, although she still limped to some extent and retained a permanent disability. Dr. Henson rated Plaintiff's disability at 35% impairment to her left foot, or 25% to her lower extremity, or 10% to her body as a whole. Plaintiff's permanent limp had caused her to have back problems as well. Plaintiff was released for work on March 24, 1986, with the same limitation as imposed by Dr. Oglesby regarding sedentary work. Both doctors concurred that Plaintiff could not stand for more than about 30 minutes at a time without significant increase in pain. Dr. Henson believed that prior to the second operation on her foot, Plaintiff was completely unemployable due to her condition.

Other evidence at trial, held on March 25, 1986, showed that Plaintiff was over 40 years old, had about a tenth grade education, was divorced with no minor children, and had no special skills or vocational training. She had no history of any pre-existing problems with her feet. She had worked at a variety of jobs, most of which required standing or walking, such as being a waitress or a bartender. She had not been able to work or to return to work for Defendant after July 27, 1984. Both permanency and causation of Plaintiff's condition were shown by expert medical evidence. Dr. Henson testified in his deposition that the conditions of her work caused the heel spurs. He also testified that her

permanent limp, which was caused by her foot condition, caused her to experience back problems as well. Although Dr. Oglesby had not made any notations in his records regarding back pain, he did agree that Plaintiff's limp could result in such problems. In addition, a clinical psychologist with a specialty in vocational psychology, Dr. George E. Copple, gave Plaintiff an occupational disability rating of 55 to 60%, considering her present physical limitations, her employment history, and her educational background.

■ This case is decided under the material evidence standard of review. *See Alley v. Consolidation Coal Co.,* 699 S.W.2d 147, 149 (Tenn.1985). Defendants contend on appeal that no written notice was given by Plaintiff within 30 days of the injury and that they had no actual notice. In *International Playing Card and Label Co. v. Broyles,* 214 Tenn. 530, 536, 381 S.W.2d 888, 890 (1964), this Court held that notice is generally an issue of fact, and thus if material evidence supports the decision of the trial court, we must affirm it. In this case, Plaintiff, unaware of the cause of her problem, repeatedly notified her supervisor that she was experiencing increasing pain and difficulty working. She was allowed to see the company nurse on several occasions for her complaints. She was granted leaves of absence. Her supervisor recognized Plaintiff's condition as being similar to problems suffered by other women at Defendant's plants. Plaintiff's employer placed a mat or rug at her work station to help relieve the pain and symptoms of her condition. The trial court drew the inference from these facts that Defendants had actual notice. This inference is supported by material evidence in the record. *See Fisher v. J.F.G. Coffee Co.,* 221 Tenn. 333, 336, 426 S.W.2d 502, 503 (1967) (*Per Curiam* ).

Defendants insist that the forms and other documents on which Plaintiff's complaints were recorded do not reflect that Plaintiff had informed her employer that the problem was work-related. Many of these documents do contain notations that the problem was not work-related and that

Plaintiff believed the injury was caused by something that happened at home. We do not, however, weigh the evidence in these cases. Moreover, many of these records were created as a direct result of Defendants' policy regarding medical claims by employees. Such self-serving and conclusory notations are not in any way binding on the trial court. In the case of a gradually developing injury and where the Plaintiff was not certain that her condition was work-related, we cannot say that the trial court was unjustified in its conclusions of fact from this record. In short, the trial court's determination is supported by material evidence. *See Central Motor Express, Inc. v. Burney,* 214 Tenn. 118, 127–128, 377 S.W.2d 947, 951 (1964).

The next contention of Defendants is that the period in which Plaintiff was eligible for temporary total disability compensation ended when Dr. Oglesby found that Plaintiff had reached maximum medical improvement on February 25, 1985, or extended to no later than August 27, 1985, when Dr. Henson assessed his rating of permanent partial impairment. Defendants argue that achievement of maximum medical improvement terminates eligibility for temporary total disability. Dr. Henson stated that prior to the second operation on Plaintiff's foot, however, she continued to be unemployable and that only after this surgery did her condition begin to improve. Although his assessment of the degree of impairment did not change, he did not determine that she had reached maximum medical improvement and release her for work until March, 1986. Plaintiff's condition, therefore, responded to further medical treatment and the trial court obviously found as a fact that she continued to be eligible for temporary total disability until she actually reached maximum medical improvement. *See Roberson v. Loretto Casket Co.,* 722 S.W.2d 380, 383 (Tenn.1986). Where evidence conflicts concerning the duration of eligibility for temporary total disability benefits, the decision of the trial court based on material evidence will stand. *See Shores v. Shores,* 217 Tenn. 96, 102–103, 395 S.W.2d 388, 391 (1965).

As Defendants' last issue, they assert that the award of permanent partial disability to the body as a whole was inappropriate because the injury is to a scheduled member. The extent of disability is a question of fact ordinarily. *Armstrong v. Spears,* 216 Tenn. 643, 652, 393 S.W.2d 729, 733 (1965) (*Per Curiam*). Although the law does require that a disability limited to a scheduled member be attributed exclusively to that member, *Roberson v. Loretto Casket Co., supra,* at 385, " 'if an injury to a specific member does not stop with the injury to or loss of that member, but for any reason continues as an injury affecting the body to such extent as to result in permanent [total or partial] disability, a recovery may be had therefor.... In such case, the injury is general and not confined to the specific member.' " *Claude Henninger Co. v. Bentley,* 205 Tenn. 241, 244, 326 S.W.2d 446, 448 (1959) (citation omitted). The evidence clearly demonstrates that the injury was not confined to Plaintiff's foot, that she developed a permanent limp as a result of her injury, that this limp caused back pain, and that this back condition would remain associated with her limp. Moreover, Dr. Henson rated Plaintiff as retaining a 10% permanent partial disability to the body as a whole. The trial court's determination of the extent of Plaintiff's disability is both justified by the evidence and permitted by the law.

Finally, Plaintiff has urged this Court to find that this is a frivolous appeal because the issues raised concern questions of fact that have been determined adversely to Defendants at trial, which are now conclusive on appeal because they are supported by material evidence, and thus the appeal had no reasonable chance of success. While this Court is repeatedly confronted with Worker's Compensation cases that border on frivolous appeals, we do not think that this case is so completely lacking in merit that the appeal is frivolous within the meaning of T.C.A. § 27–1–122. Many Worker's Compensation cases are too readily appealed to this Court. Where questions of fact have been adversely determined below but are supported by material evidence

in the record and no questions of law are presented, a frivolous appeal may be appropriately found. *See Bennett v. Howard Johnsons Motor Lodge,* 714 S.W.2d 273, 281 (Tenn.1986); *Liberty Mutual Ins. Co. v. Taylor,* 590 S.W.2d 920, 922–923 (Tenn. 1979).

Accordingly, we affirm the judgment of the Chancery Court of Davidson County. The costs are taxed to Defendants.

BROCK, C.J., HARBISON, and FONES, JJ., and GREER, Special Justice, concur.