Leonard **THOMPSON**,
Plaintiff–Appellee,

v.

**LEON RUSSELL ENTERPRISES**,
Defendant–Appellant.

Supreme Court of Tennessee,
at Nashville.

July 20, 1992.

David J. Deming, Manier, Herod, Holla-baugh & Smith, Nashville, for defendant-appellant.

John R. Phillips, Jr., Phillips & Ingrum, Gallatin, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

This workers' compensation case presents an appeal by Defendant-employer of the trial court's awards of (1) 60 percent permanent partial disability to Plaintiff-employee's body as a whole, and (2) 25 weeks temporary total disability benefits. For the reasons set forth below, the trial court is affirmed in part and modified.

On August 25, 1986, Plaintiff Leonard Thompson was injured when the bus he was driving for Defendant Leon Russell Enterprises was involved in an accident in Pennsylvania. Specifically, Plaintiff suffered cuts and bruises to his back, hip, and legs when the accident's impact caused the driver's compartment to collapse around him. Emergency personnel were eventually able to extract Plaintiff from the wreckage, and he was transported to a Pennsylvania hospital for treatment. There, Plaintiff was not found to have suffered any broken bones, and was released on crutches with the recommendation that he contact his family physician should his pain persist. Defendant's agents transported Plaintiff back to Nashville and, because Plaintiff was unable to climb the steps to his own apartment, took him to his daughter's house.

After a few days of pain, Plaintiff contacted his family physician, Dr. Boylin. Dr. Boylin treated Plaintiff conservatively with heat therapy and cortisone. When Plaintiff thereafter sought Defendant's authorization for further medical treatment, Defendant refused to respond.

During the six to eight months immediately following the accident, Plaintiff ambulated with the use of crutches or a cane. Sitting or standing for any significant period caused swelling in his knee. Plaintiff testified that he was unable to work until May 1987, at which time he secured occasional part-time employment as a dispatcher for a tour bus company.

Over the next several years, Plaintiff continued to secure part-time employment; however, due to lack of financial resources, he was unable to obtain satisfactory treatment for his knee. Finally, on October 10, 1990, Plaintiff underwent arthroscopic surgery on his left knee. On November 19, 1990, the operating surgeon, Dr. Eyring, released Plaintiff to return to work.

Dr. Eyring assessed a permanent impairment of 20 percent to Plaintiff's left leg. Defendant's examining physician, Dr. Bishop, assessed a permanent impairment of 10 percent to the left leg.

The trial court awarded Plaintiff 60 percent permanent partial disability to the body as a whole, and 25 weeks temporary total disability benefits. We must decide (1) whether the permanent partial disability award was properly assigned to the body as a whole instead of to a scheduled member, the left leg, and (2) whether there was sufficient evidence to support an award of 25 weeks temporary total disability benefits. Our standard of review in workers' compensation cases is *de novo* upon the record, accompanied by a presumption of the correctness of the trial court's findings of fact, unless a preponderance of the evidence is otherwise. T.C.A. § 50–6–225(e)(2) (1991).

## I.

Defendant asserts that, because the record contains no proof the left knee injury caused permanent disability beyond the leg, Plaintiff's recovery must be limited to scheduled member benefits under T.C.A. § 50–6–207(3)(A)(ii)(*o* ), instead of benefits to the body as a whole. We agree.

■■■ As a general rule, permanent partial disability benefits based on an injury to a "scheduled member" are exclusively controlled by the schedule established by the General Assembly for that member and may not properly be apportioned to the body as a whole. *See* T.C.A. § 50–6–207(3)(F) (1991); *Lock v. National Union Fire Ins. Co.,* 809 S.W.2d 483, 486 (Tenn. 1991); *Reagan v. Tennessee Mun. League,* 751 S.W.2d 842, 843 (Tenn.1988). However, for purposes of this rule, the term "scheduled member" is limited to only those members, and combinations of members, provided for in the statutory framework at T.C.A. § 50–6–207(3)(A)(ii)(*a* ) to (*ff*) (1991). Thus, where an injury is to a portion of the body not statutorily "scheduled," *see, e.g., Perry v. City of Knoxville,* 826 S.W.2d 114 (Tenn.1991) (heart attack); *Beck v. State,* 779 S.W.2d 367 (Tenn.1989) (post-traumatic stress disorder); *Corcoran v. Foster Auto GMC, Inc.,* 746 S.W.2d 452 (Tenn.1988) (hernia), where an injury affects a particular combination of members not statutorily provided for, *see, e.g., Vanatta v. Tomlinson,* 774 S.W.2d 921 (Tenn. 1989) (arm, leg, hip, and back); *General Smelting and Refining, Inc. v. Whitefield,* 579 S.W.2d 857 (Tenn.1979) (right arm, right foot, left hand, and left leg); *Tennlite, Inc. v. Lassiter,* 561 S.W.2d 157 (Tenn. 1978) (right leg, left leg, and hand), or where a scheduled injury causes a permanent injury to an unscheduled portion of the body, *see, e.g., Kerr v. Magic Chef, Inc.,* 793 S.W.2d 927 (Tenn.1990) (hand injury caused permanent psychological injury); *Riley v. Aetna Cas. & Sur.,* 729 S.W.2d 81 (Tenn.1987) (foot injury caused permanent back injury), disability is properly assigned to the body as a whole. *See* T.C.A. § 50–6–

207(3)(F) (1991). Note also that the fact a scheduled injury can be converted, via the American Medical Association Guides to the Evaluation of Permanent Impairment or the Manual For Orthopedic Surgeons in Evaluating Permanent Physical Impairment, to a percentage disability to the body as a whole provides no basis upon which to sustain an award to the body as a whole under Tennessee Workers' Compensation Law. *See Reagan,* 751 S.W.2d at 843–44.

■■ Here, there is credible evidence indicating that Plaintiff did, in addition to his knee injury, suffer back and hip problems as a result of the work-related accident. However, in order to support a permanent disability award to the body as a whole, it must be shown that the scheduled member injury caused a *permanent* injury to an unscheduled portion of the body. *See Kerr,* 793 S.W.2d at 929; *Riley,* 729 S.W.2d at 84. Because Plaintiff here has failed to establish through expert testimony that his hip or back injuries are permanent, an award to the body as a whole is precluded.

Nevertheless, the record below clearly establishes Plaintiff suffers a significant impairment as a result of his knee injury. Plaintiff must often interrupt his activities and elevate his leg in order to reduce the swelling. He walks with a permanent limp. Accordingly, for all the above reasons, we modify the trial court's award from 60 percent permanent partial disability to the body as a whole to an award of 80 percent permanent partial disability to the left leg.

## II.

Defendant next challenges the trial court's award of 25 weeks temporary total disability benefits as excessive. This award represented 19 weeks immediately following the injury and the 6 weeks necessary for Plaintiff's post-operative recovery. Defendant asserts Plaintiff is entitled to temporary total benefits only from the date of his knee surgery, October 10, 1990, to his release to work on November 19, 1990.[1]

■■■ The purpose of temporary total benefits is to compensate an employee during a healing period where he is totally

---

1. This assertion was modified at oral argument, where counsel for Defendant suggested Plaintiff was equitably entitled to approximately 10 weeks temporary total benefits.

prevented from working. *See Vanatta,* 774 S.W.2d at 925. Eligibility for temporary total benefits ceases when the employee either is able to return to work or attains maximum recovery. *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn.1978). Lay testimony, including that of the injured employee, "may be admitted on the issue of the employee's inability to work and may be sufficient to establish that fact without expert medical testimony." *Id.* at 956.

■ Here, Plaintiff was injured in August 1986 and did not work again until May 1987, some 38 weeks. Plaintiff testified that during this time he was not able to work as a driver or mechanic because he could not operate a clutch or lift heavy objects. He also was experiencing swelling in his leg after sitting or standing for an extended period. However, Plaintiff also testified that during these months he spent a great deal of time caring for his father who was suffering from Alzheimer's disease.

The trial court considered the above testimony and awarded Plaintiff 19⅔ths weeks temporary total benefits representing the period immediately after his injury and 5⅗ths weeks for the period immediately following his knee surgery, for a total of 25 weeks. We find the evidence fully supports the trial court's determination with respect to the temporary total disability award.

Accordingly, we affirm that portion of the trial court's decision awarding Plaintiff 25 weeks temporary total disability benefits and medical expenses. We modify that portion of the trial court's decision respecting permanent partial disability benefits, and award Plaintiff benefits based on 80 percent permanent partial disability to the left leg.

Costs of this appeal are to be divided equally between the parties.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.