# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
(Assigned on Briefs April 3, 2002)

## LARRY DEAN SEAL v. CHARLES BLALOCK & SONS, INC., ET AL.

**Appeal from the Circuit Court for Hancock County**
**No. C-2980     Kindall T. Lawson, Judge**

---

**No. E2001-00050-SC-WCM-CV - Filed October 11, 2002**

---

In this workers' compensation case, we are asked to determine whether the trial court erred in awarding benefits for a 93% vocational disability to the body as a whole. The employer contends that compensation should be limited to an award for loss of a scheduled member. After reviewing the record and applicable authority, we conclude that the evidence preponderates against the trial court's award of benefits for disability to the body as a whole; accordingly, we modify the judgment of the trial court to provide for an award of 100% disability to the leg. Additionally, we find no error in the trial court's admission of the physical therapist's testimony.

**Tenn. Code Ann. § 50-6-225(e)(5)(B) Motion for Review; Findings of Fact and Conclusions of Law of the Special Workers' Compensation Appeals Panel Affirmed; Judgment of the Trial Court Modified.**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and JANICE M. HOLDER and WILLIAM L. BARKER JJ., joined. E. RILEY ANDERSON, J, not participating.

David M. Sanders, Knoxville, Tennessee, for the appellant, Travelers Insurance Company.

James M. Davis, Morristown, Tennessee, for the appellee, Larry Dean Seal.

## OPINION

### I. Facts and Procedural History

The employee, Larry Dean Seal, was thirty-nine years old at the time of trial and had an eighth-grade education. His work history consisted primarily of manual labor, including operating a fork lift, trimming parts in a die casting plant, feeding lumber through a rip saw in a furniture factory, running a roller for a paving company, and operating a backhoe.

On July 13, 1998, Seal was working as a heavy machine operator for Charles Blalock & Sons, Inc. (Blalock). While using a scraper on a steep hill, Seal lost control of the machine. It careened through a rocky area, and Seal was thrown against the seat, windshield, and steering wheel. His foot became caught under the seat; his heel and sternum were fractured. It is his foot injury which has caused extended disability.

Seal was first treated by Paul Reed, M.D., who ordered x-rays and prescribed medication for pain. Later, Seal sought medical treatment in the Morristown–Hamblen Hospital emergency room. He was given medication for pain and referred to Stephen Graham, M.D., who continued treatment with pain medication and fitted Seal with a "cam walker"[1] brace for his leg. Seal was unable to wear the brace, however, because the metal bars on the side of the brace caused pain when his foot swelled. Graham released Seal to return to work on November 17, 1998, and subsequently opined that Seal reached maximum medical improvement on December 16, 1998.

Seal informed Blalock that he could return to work, but Blalock terminated his employment because the work restrictions imposed by his doctor prohibited him from handling heavy machinery or standing to direct traffic as a flag person. Seal continued to seek treatment for pain and swelling in his leg. After Graham relocated, Seal pursued treatment with John Hancock, M.D., who referred Seal to Michael W. Bratton, M.D., an orthopedic surgeon.

Seal filed a complaint seeking benefits under the Workers' Compensation Act, and the parties proceeded to trial. At trial, Seal testified that the pain and swelling in his leg left him unable to farm, operate pedals on heavy machinery, get on and off such machinery, or stand for over ten to fifteen minutes on concrete. He asserted that the pain from his injury extended up his back and caused him to limp when he walked. He further testified that the swelling in his foot had continued and that the back pain was worsening.

The parties presented extensive deposition testimony. Seal offered the testimony of orthopedic surgeon William J. Gutch, M.D.; vocational expert Norman R. Hankins, Ed. D.; and physical therapist Kathy B. Lane. Gutch testified that Seal suffered from a fracture of the calcaneus,[2] traumatic arthritis of the subtalar joint, restriction of motion and pain in the ankle and hind foot, persistent swelling in the foot, and calf atrophy. He described Seal's injury as a significant one which would cause pain for Seal's lifetime and drastically limit Seal's ability to walk or stand, and he opined that the pain inevitably would become unrelenting. Eventually, he stated, a procedure known as subtalar arthrodesis, involving a surgical fusion of joints in the foot, would be required to alleviate some of Seal's pain. Gutch concluded that the injury had rendered Seal unable to walk or stand for more than thirty minutes at a time (totaling three hours in an eight-hour day), carry objects, climb stairs, walk on unlevel ground, or push the clutch and brake pedals on heavy equipment.

---

[1]A "cam walker" was described as a "walking type boot very equivalent to a short-leg cast" which allows motion.

[2]Gutch described the calcaneus as a small heel bone which supports the weight of the body.

Hankins testified that he performed a vocational assessment on Seal and administered tests to measure Seal's abilities. He stated that Seal read on a third-grade level, performed arithmetic on a second-grade level, and, based on the Slosson Intelligence Test, was found to have an IQ of fifty-four. Hankins further stated that Seal did not show any clerical aptitude, had poor memory, and functioned "at a level that would be generally considered to be mildly retarded." Hankins found that Seal's restrictions would eliminate 93 to 96% of the jobs Seal was qualified for, and he concluded that Seal would have no realistic chance of obtaining employment were he to compete in the open labor market for a job doing sedentary work. He opined that Seal was 100% vocationally disabled.

Lane testified that she performed a functional capacity evaluation on Seal. She observed that Seal complained of pain in his heel immediately upon standing and pain in his lower back after sitting for one hour. In her testing, she found decreased ankle and foot motion, an abnormal gait, and a loss of right hip flexion, and she further found that Seal could lift ten pounds on a frequent basis, twenty pounds on an occasional basis, and less than forty pounds on a one-time basis. She also noted that a treadmill test caused Seal to suffer severe back pain and heel pain.

Blalock presented the deposition testimony of orthopedic surgeon Michael W. Bratton, M.D., and vocational expert Michael T. Galloway, M.S., C.R.C. Bratton found Seal to have very poor motion, a limp, a flattening of the calcaneus, and arthritic changes to the subtalar joint between the heel bone and the bone above the heel. He testified that Seal would experience pain after walking five minutes, would be limited in his ability to walk on uneven ground, and would be more suited to a "sitting-down job." In Bratton's opinion, Seal could drive heavy equipment, but such activity would not be beneficial to his long-term health. Bratton agreed with Gutch that the arthritis would progress, and inevitably, Seal would need surgical fusion of certain joints in his foot. According to Bratton, this surgery would increase Seal's impairment rating.

Galloway testified by deposition that he, like Hankins, administered a Slosson Intelligence Test to Seal. The test resulted in an IQ score of twenty-seven to forty-five (between severely mentally handicapped and moderately mentally handicapped), a result which Galloway opined was too low to be valid. He initially concluded, based on medical records, that Seal had a 20% loss of labor market access under Bratton's restrictions and a 60% loss of labor market access under Gutch's restrictions. But after reviewing a later letter drafted by Bratton, Galloway testified that Seal actually had no vocational disability at all. He testified that Seal was qualified for jobs involving food preparation, assembling, packaging, bagging, inspecting production, garment folding, driving, operating sewing machines, operating press machines, machine feeding, and construction work.

In its determination of the case, the trial court first addressed whether the fracture in the foot should be treated as an injury to the body as a whole or as a scheduled member injury. It found that the effects of the injury extended beyond Seal's foot, and consequently, it regarded Seal's injury as being to the body as a whole.

The trial court next addressed the extent of Seal's vocational disability. Noting Seal's credibility and the evidence concerning his vocational abilities and prospects, it found a 93% vocational disability to the body as a whole.

Blalock's workers' compensation insurance carrier,[3] Travelers Insurance Company (Travelers), appealed this decision, contending that: (1) the injury to Seal's heel was not an impairment to the body as a whole under Tennessee Code Annotated § 50-6-207(3) (1999); (2) the 93% disability rating was excessive; and (3) the deposition testimony of the physical therapist was not admissible as expert medical evidence. The Special Workers' Compensation Appeals Panel concluded that the injury was limited to Seal's right leg and held that the award for disability to the body as a whole was error. Additionally, the Panel found error in the admission of the physical therapist's testimony. The Panel remanded the case to the trial court for the recalculation of the award as one involving disability to a scheduled member.

Seal filed a motion for review to this Court pursuant to Tennessee Code Annotated § 50-6-225(e)(5)(B) (1999 & Supp. 2001), which was granted.

## II. Standard of Review

In workers' compensation cases, the standard of review of questions of law is de novo with no presumption of correctness. Tucker v. Foamex, L.P., 31 S.W.3d 241, 242 (Tenn. 2000). Our review of a trial court's factual findings, however, is de novo upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Id.; Tenn. Code Ann. § 50-6-225(e)(2) (1999 & Supp. 2001). "When the trial court has seen the witnesses and heard the testimony, especially where issues of credibility and the weight of testimony are involved, the appellate court must extend considerable deference to the trial court's factual findings." Richards v. Liberty Mut. Ins. Co., 70 S.W.3d 729, 732 (Tenn. 2002). On the other hand, when, as in the case before us, the medical proof is presented by deposition, this Court is in the same position as the trial judge for evaluating such evidence and may assess independently the weight and credibility to be afforded the expert testimony. Id.

## III. Analysis

### A. Designation of Impairment to the Body as a Whole

The first issue presented by the parties concerns the trial court's finding of a disability to the body as a whole. Travelers contends that Seal's injuries were limited to a scheduled member, and therefore, it was error to apportion compensation to the body as a whole. Seal responds that the injury extended beyond the scheduled member and that the trial court's decision, accordingly, should

---

[3]Under the Workers' Compensation Act, the insurance carrier generally is considered equivalent to the employer, so that an injured employee typically may elect to sue either the employer, the insurance carrier, or both parties when bringing an action for workers' compensation benefits. See generally Tenn. Code Ann. § 50-6-102(11) (1999).

be affirmed. Under the evidence presented in this case, we find that the disability is appropriately limited to a scheduled member.

It is uncontested that the initial injury occurred to the heel of Seal's right foot, a scheduled member. In order to support an award for permanent disability to the body as a whole, it must be shown that the effects of the scheduled member injury extend to an unscheduled portion of the body. See Wells v. Sentry Ins. Co., 834 S.W.2d 935, 938 (Tenn. 1992); Thompson v. Leon Russell Enters., 834 S.W.2d 927, 928 (Tenn. 1992). Although the evidence shows that Seal suffered from atrophy to his calf as a result of his foot injury, this alone would not satisfy the requirement of effects extending to unscheduled parts of the body because the leg also is a scheduled member. Additionally, our cases have historically treated an injury to the leg and foot, as an injury to one scheduled member, the leg. See e.g., Reagan v. Tennessee Municipal League, 751 S.W.2d 842, 843 (Tenn. 1988). No medical evidence of an injury to an unscheduled portion of the body is found in the record. Accordingly, the trial court's designation of the impairment to the body as a whole must be modified. Furthermore, the evidence of Seal's educational background, mental ability, and vocational background, in conjunction with the medical evidence that the fracture of the calcaneus will be a progressive injury severely limiting Seal's ability to walk or stand, supports a finding that Seal has a 100% disability to his leg. The trial court's award of workers' compensation benefits based on the body as a whole is therefore modified to provide for an award based on 100% disability to the leg.

## B.  Admission of Physical Therapist's Testimony

Travelers also asserts that the trial court erred in admitting the deposition testimony of physical therapist Kathy B. Lane. This Court has held "that a physical therapist is not qualified to form and express an expert opinion as to the permanent impairment or permanent physical restrictions of an injured person . . . . [A] physical therapist's testimony must be limited to objective findings and cannot encompass an opinion on ultimate disability."  Bolton v. DNA Ins. Co., 821 S.W.2d 932, 938 (Tenn. 1991). We have acknowledged, however, that "nothing we have said would limit a physical therapist from making future physical activity recommendations to the referring physician or a patient based on the results of tests performed within the scope of a physical therapist's licensure, nor from offering testimony thereon." Id. Lane's testimony was comprised of her objective test findings and therefore was within these strictures; there was no error in admitting Lane's testimony.

## IV.  Conclusion

We conclude that the disability awarded in this case must be limited to a scheduled member – the leg. Accordingly, we modify the judgment of the trial court to provide an award of 100% disability to the leg. The case is remanded to the trial court for further necessary proceedings. Costs on appeal shall be taxed to Larry Dean Seal, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE