IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 4, 2005 Session

# RONNIE DOTSON  v.  RICE-CHRYSLER-PLYMOUTH-DODGE, INC., ET AL.

**Direct Appeal from the Blount County Chancery Court**
**No. 02-208    Telford E. Forgety, Chancellor**

---

**No. E2004-00669-SC-R3-CV - Filed March 16, 2005**

---

In this workers' compensation action, the plaintiff sought compensation for a work-related injury which caused reflex sympathetic dystrophy in his left arm, a scheduled member for workers' compensation purposes.  The plaintiff contended that reflex sympathetic dystrophy which affects only a scheduled member nevertheless entitles a claimant to body-as-a-whole compensation because the American Medical Association's Guides to the Evaluation of Permanent Impairment convert reflex sympathetic dystrophy to a rating for the body as a whole.  Alternatively, the plaintiff contended that his condition extended beyond his arm because he was denied potential future treatment options for other, non-work-related injuries and because his arm's hypersensitivity and pain caused insomnia, chronic fatigue, and a diminished ability to concentrate.  Holding that reflex sympathetic dystrophy must always be apportioned to the body as a whole, the trial court awarded the plaintiff permanent total disability benefits.  Reversing the trial court, we hold that an award for reflex sympathetic dystrophy may be limited to the compensation for scheduled members as provided in Tennessee Code Annotated section 50-6-207(3)(A) to (D) (1999).  Further, we hold that for reflex sympathetic dystrophy to be properly apportioned to the body as a whole under Tennessee Code Annotated section 50-6-207(3)(F) (1999), the claimant's injury must affect a portion of the body not statutorily scheduled, affect a particular combination of members not statutorily provided for, or cause a permanent injury to an unscheduled portion of the body.  Having so held, we determine that the preponderance of the evidence fails to show that the plaintiff's condition has extended beyond his arm as a scheduled member.  Therefore, we vacate the trial court's award of permanent total disability benefits to the plaintiff and hold that the plaintiff's permanent disability award is limited exclusively to 200 weeks of benefits pursuant to Tennessee Code Annotated section 50-6-207(3)(A)(ii)(m) (1999).  We remand this case to the trial court for further proceedings consistent with this opinion, as may be necessary.

**Tenn. Code Ann. § 50-6-225(e); Judgment of the Chancery Court Reversed and Vacated;**
**Case Remanded to the Trial Court**

FRANK F. DROWOTA, III, C.J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, J.J., joined.

Robert R. Davies, Knoxville, Tennessee, for the appellants, Rice-Chrysler-Plymouth-Dodge, Inc. and the Hartford.

Louis Andrew McElroy, II, Knoxville, Tennessee, for the appellee, Ronnie Dotson.

**OPINION**

**I. Factual and Procedural Background**

The plaintiff, Ronnie Dotson, worked as a delivery driver and stockperson for the defendant auto dealership, Rice-Chrysler-Plymouth-Dodge, Inc., which was insured by co-defendant, the Hartford. According to the record, Mr. Dotson was forty-two years old at the time of trial. He has completed a ninth-grade education, achieving below-average reading and mathematic abilities. His prior vocational history consisted largely of medium to heavy labor in various unskilled or low-level semi-skilled positions.

Mr. Dotson had been employed by Rice-Chrysler for about eight years when he suffered a work-related accident. On August 1, 2001, while dragging to storage a crated 150-pound side-panel for a van, he slipped on a piece of sheet metal which lay on Rice-Chrysler's warehouse floor. The heavy crate fell over, crushing his left hand against a four-by-four inch post.

This accident caused various traumatic injuries. According to the deposition testimony of Todd R. Griffith, M.D., one of Mr. Dotson's treating physicians, the impact of the crate fractured a metacarpal bone in Mr. Dotson's left hand and caused bruising and swelling. Mr. Dotson also experienced numbness and tingling in the fingers of his left hand which in Dr. Griffith's opinion were caused by "traumatic carpal tunnel syndrome." With his left hand and forearm in a cast, Mr. Dotson soon returned to work for four days, but pain in his left hand prevented him from continuing. Since then he has not worked.

According to Dr. Griffith, by September 2001 Mr. Dotson began experiencing symptoms in his left hand indicative of reflex sympathetic dystrophy ("RSD"),[1] such as increased sweating, hypersensitivity and pain. Dr. Griffith defined RSD as a "syndrome characterized by increased sympathetic nervous overdrive to the vessels and nerves in a limb, typically an upper extremity. It causes changes in temperature, changes in sweating, and most clinically significant[,] severe pain that is difficult to control." In Dr. Griffith's opinion, Mr. Dotson's RSD was caused by the impact of the crate upon his left hand. Following surgery on October 5, 2001 which corrected Mr. Dotson's

---

[1]RSD is also known as complex regional pain syndrome.

carpal tunnel syndrome, the symptoms of his RSD worsened.

Subsequently, in spite of various treatments, Mr. Dotson's left hand has suffered chronically from loss in range of motion, increased sweating, constant hypersensitivity to touch, severe pain, and a "burning[,] . . . throbbing, aching" sensation. According to Mr. Dotson, even the slightest contact of any object with his left hand has caused "unbearable" irritation and pain. Although quietude has served to mitigate this pain, according to Mr. Dotson and his wife, Rebecca Lynn Dotson, his condition has nevertheless given rise to insomnia, chronic fatigue, and a diminished ability to concentrate upon tasks.

Dr. Griffith determined on May 16, 2002 that Mr. Dotson had reached maximum medical improvement. Dr. Griffith regarded the RSD in Mr. Dotson's left hand as permanent and imposed a permanent restriction against any vocational use of Mr. Dotson's left arm. Dr. Griffith further recommended that he receive specialized chronic pain management. Based on the American Medical Association's Guides to the Evaluation of Permanent Impairment (5th ed. 2001) ("AMA Guides"), Dr. Griffith assigned a 74% anatomical impairment rating to Mr. Dotson's left upper extremity and a 44% impairment rating to his body as a whole.

Mr. Dotson brought a workers' compensation action in the Blount County Chancery Court against Rice-Chrysler and the Hartford (collectively the "defendants"). At trial, Mr. Dotson maintained that the RSD in his left arm extended beyond the arm as a scheduled member, Tenn. Code Ann. § 50-6-207(3)(A)(ii)(m) (1999), thus satisfying the requirements for body-as-a-whole compensation, § 50-6-207(3)(F). First, Mr. Dotson argued that denial of surgery as a treatment option for non-work-related lateral epicondylitis (or "tennis elbow")[2] in his right arm amounts to an extension of the RSD beyond his left arm. Dr. Griffith testified in his deposition that "with the history of RSD in the left arm, [Mr. Dotson] is at higher risk of developing RSD in his right arm if he were to undergo a surgical procedure. . . . So I did not give him the option of surgical treatment of his tennis elbow." Second, Mr. Dotson argued that the RSD in his left arm has extended to his body as a whole via the insomnia and fatigue consequent to his chronic pain.

Furthermore, Mr. Dotson alternatively maintained that as a matter of law RSD must always be classified as injury to the body as a whole regardless of whether the RSD is confined to a scheduled member. The AMA Guides require conversion of upper extremity impairment caused by RSD to an anatomical disability rating for the body as a whole. Mr. Dotson contends that because the Tennessee General Assembly has mandated use of the AMA Guides in rating anatomical disability, Tenn. Code Ann. § 50-6-204(d)(3) (1999), the AMA Guides' conversion of RSD to the body as a whole consequently mandates classification of RSD as injury to the body as a whole.

The defendants responded by arguing that there is insufficient evidence to show that Mr.

_____

[2]Lateral epicondylitis involves inflammation and pain in the tissues adjoining the elbow's outside bony projection. See Attorneys' Textbook of Medicine ¶ 4.72 (Roscoe N. Gray et al. eds., 3d ed. 2001); PDR Medical Dictionary 582 (1995).

Dotson's RSD has extended beyond the left arm as a scheduled member. The defendants also disputed the assertion that RSD must always be classified as injury to the body as a whole. They emphasized that the AMA Guides convert a variety of scheduled member injuries to a body-as-a-whole rating but pointed out that such conversion is not always required as a matter of law. According to the defendants, because Dr. Griffith testified unequivocally that the symptoms of Mr. Dotson's RSD were limited to his left arm, he should be limited to compensation for loss of a scheduled member.

The trial court characterized as insubstantial and "thin" any evidence for extension of RSD beyond Mr. Dotson's arm as a scheduled member. Nevertheless, in light of the conversion scheme for RSD provided in the AMA Guides, the trial court held that as a matter of law "RSD is required to be converted to the body as a whole." Having thus determined that Mr. Dotson's RSD cannot be limited to scheduled member compensation, the trial court focused on the extent of his vocational disability. Vocational expert Jane L. Hall testified at trial that in her opinion Mr. Dotson was permanently and totally disabled vocationally. In contrast, vocational expert Rodney E. Caldwell, Ph.D. opined in a deposition that Mr. Dotson was 75% vocationally disabled. Taking into account all the relevant evidence, the trial court found Mr. Dotson to be permanently and totally disabled within the meaning of Tennessee Code Annotated section 50-6-207(4)(B) (1999). Therefore, the trial court ordered Rice-Chrysler and the Hartford to pay Mr. Dotson permanent disability benefits from the date of maximum medical improvement, May 16, 2002, until he becomes eligible for social security retirement benefits, with an offset for certain lump sum awards.

Rice-Chrysler and the Hartford appealed. We transferred this case for review by the entire Supreme Court.

## II. Analysis

The primary question in this case is whether, for purposes of workers' compensation, reflex sympathetic dystrophy must always be classified as injury to the body as a whole, regardless of whether the effects of RSD are limited to a scheduled member. Because this is a matter of law which involves construing the workers' compensation statutory scheme, our standard of review is de novo with no presumption of correctness. Ivey v. Trans Global Gas & Oil, 3 S.W.3d 441, 446 (Tenn. 1999). We now decide this issue of first impression.

Workers' compensation claims necessarily fall into one of four statutory classifications: (1) temporary total disabilities; (2) temporary partial disabilities; (3) permanent partial disabilities; and (4) permanent total disabilities. Tenn. Code Ann. § 50-6-207(1) to (4) (1999). Each separate disability classification is independent, serves a specific compensation goal, and provides distinct benefits. See Davis v. Reagan, 951 S.W.2d 766, 767 (Tenn. 1997). Permanent partial disability is further subdivided into compensation for loss of enumerated scheduled members, for serious disfigurement, and for disability apportioned to the body as a whole. Tenn. Code Ann. § 50-6-207(3) (1999). Restated, our question is whether compensation for RSD may be limited to the specific

benefits provided for loss of a scheduled member or must always be apportioned to the body as a whole.

We begin our analysis by addressing the relationship between the workers' compensation statutory scheme and the AMA Guides. Tennessee Code Annotated section 50-6-204(d)(3) (1999) states:

> To provide uniformity and fairness for all parties, any medical report prepared by a physician furnishing medical treatment to a claimant shall use the American Medical Association Guides to the Evaluation of Permanent Impairment, (American Medical Association) or the Manual for Orthopedic Surgeons in Evaluating Permanent Physical Impairment, (American Academy of Orthopedic Surgeons). A physician shall utilize the most recent edition of either publication in determining the degree of anatomical impairment. A practitioner shall be required to give an impairment rating based on one (1) of the two (2) publications noted above.[3]

The purpose of statutorily-mandated use of the AMA Guides is provided in the statute itself: "[t]o provide uniformity and fairness for all parties . . . ." Tenn. Code Ann. § 50-6-204(d)(3). As we explained in Corcoran v. Foster Auto GMC, Inc., 746 S.W.2d 452, 457 (Tenn. 1988), this language "clearly evidences a legislative intent to standardize the methods of rating percentages of anatomical disability to minimize arbitrariness and [to] encourage predictability in such assessments by medical experts."

Yet in demanding that a medical expert follow the AMA Guides when assessing anatomical disability, the statute does not somehow elevate the AMA Guides themselves to the status of law. Rather, the AMA Guides are nothing more than tools for effectuating in a fair and predictable way the paramount goals and requirements of the workers' compensation statutory scheme. See

---

[3]Section 50-6-204(d)(3) (1999) was in force when this cause arose and remains applicable to this appeal. It has since been totally superseded by an amended section now in effect. 2004 Tenn. Pub. Acts ch. 962, § 13. Tennessee Code Annotated section 50-6-204(d)(3)(A) (Supp. 2004) provides:

> To provide uniformity and fairness for all parties in determining the degree of anatomical impairment sustained by the employee, a physician, chiropractor or medical practitioner who is permitted to give expert testimony in a Tennessee court of law and who has provided medical treatment to an employee or who has examined or evaluated an employee seeking workers' compensation benefits shall utilize the applicable edition of the AMA Guides as established in [section] 50-6-102 or in cases not covered by the AMA Guides an impairment rating by any appropriate method used and accepted by the medical community.

For the limited purposes of this opinion, there is no material difference between the versions.

Thompson v. Leon Russell Enters., 834 S.W.2d 927, 929 (Tenn. 1992) ("[T]he fact [that] a scheduled injury can be converted, via the [AMA Guides] or the Manual for Orthopedic Surgeons . . ., to a percentage disability to the body as a whole *provides no basis upon which to sustain an award to the body as a whole* under Tennessee Workers' Compensation Law.") (emphasis added); Reagan v. Tenn. Mun. League, 751 S.W.2d 842, 844 (Tenn. 1988) ("The mere fact that a medical impairment rating to a particular member may translate, for purposes of [the AMA Guides], into a disability rating to the body as a whole *does not alter the rule that if an injury is to a scheduled member only, the statutory schedules must control the disability award*.") (emphasis added). In short, the statutory compensation scheme controls the application of the AMA Guides. As the defendants correctly assert, to require injury to a scheduled member alone to be apportioned to the body as a whole merely because the AMA Guides so provide would confound the classification scheme provided in Tennessee Code Annotated section 50-6-207.

Because RSD is not specifically provided for by statute, adjudication of benefits for that condition is controlled generally by the statutory classification scheme. It is well settled that under Tennessee workers' compensation law, an award for permanent injury to a scheduled member alone is exclusively limited to the award provided by the statutory schedule of Tennessee Code Annotated section 50-6-207(3)(A) to (D) (1999). Ivey, 3 S.W.3d at 448 ("[W]here an employee's only injury is to a scheduled member, he or she may receive only the amount of compensation provided for in the statutory schedule."); McIlvain v. Russell Stover Candies, Inc., 996 S.W.2d 179, 185 (Tenn. 1999). By contrast, benefits for injury to the body as a whole, Tenn. Code Ann. § 50-6-207(3)(F) (1999), are available "where an injury is to a portion of the body not statutorily 'scheduled,' where an injury affects a particular combination of members not statutorily provided for, or where a scheduled injury causes a permanent injury to an unscheduled portion of the body." Thompson, 834 S.W.2d at 929 (citations omitted).

In accord with this statutory scheme, we hold that where reflex sympathetic dystrophy affects a scheduled member alone, an award of permanent disability benefits is limited exclusively to what the schedule for that member provides. For reflex sympathetic dystrophy to be properly apportioned to the body as a whole, the claimant's injury must affect a portion of the body not statutorily scheduled, affect a particular combination of members not statutorily provided for, or cause a permanent injury to an unscheduled portion of the body. See id. at 929.[4] Therefore, we reverse the

---

[4]Although several unpublished decisions of the Workers' Compensation Panel have apportioned RSD to the body as a whole, they have done so because in each case there was injury to an unscheduled portion of the body, the injury affected a particular combination of members not statutorily provided for, or a scheduled injury caused a permanent injury to an unscheduled portion of the body. See, e.g., T.V. Swaw v. Trane Unitary Prods. Commercial, No. M2001-02793-WC-R3-CV, 2002 WL 31740214 (Tenn. Workers' Comp. Panel Dec. 9, 2002) (concluding that there was injury to the body as a whole where RSD in left knee caused right knee injury and where necessary medication had negative side-effects upon claimant); David Coleman v. Lumbermens Mut. Cas. Co., No. W2000-01168-WC-R3-CV, 2001 WL 285209 (Tenn. Workers' Comp. Panel Mar. 15, 2001) (concluding that there was injury to the body as a whole where RSD affected shoulder and back and

-6-

trial court's holding that the RSD in Mr. Dotson's left arm must be apportioned to the body as a whole because the AMA Guides so provide, regardless of whether the claimant has otherwise satisfied the requirements for an award to the body as a whole.

Having thus decided the primary issue, we must now evaluate Mr. Dotson's injury in light of the standard which we have adopted. Findings of fact are reviewed de novo upon the record of the trial court, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. Code. Ann. § 50-6-225(e)(2) (1999); McIlvain, 996 S.W.2d at 183. An appellate court thus conducts an independent review to determine where the preponderance of the evidence lies. Walker v. Saturn Corp., 986 S.W.2d 204, 207 (Tenn. 1998).

In his deposition, Dr. Griffith testified that, in his expert opinion, Mr. Dotson had RSD in his left lower arm and that the condition was permanent. According to Dr. Griffith, as a result of the RSD, Mr. Dotson "basically does not have any functional use of his left arm." Moreover, at trial counsel for the defendants conceded that Mr. Dotson's loss of use of the arm was 100%. Accordingly, we conclude that Mr. Dotson is entitled to a permanent partial disability award for total loss of his left arm as a scheduled member. See Tenn. Code Ann. § 50-6-207(3)(A)(ii)(m) (1999) ("For the loss of an arm, sixty-six and two-third percent (66⅔%) of the average weekly wages during two hundred (200) weeks.").

Further, vacating the trial court's award of permanent total disability benefits, we hold that Mr. Dotson's permanent disability award is limited exclusively to the 200 weeks provided for total loss of an arm as a scheduled member. See id. The preponderance of the evidence fails to show that Mr. Dotson's injury qualifies for an award to the body as a whole. First, Dr. Griffith testified unequivocally that the symptoms of Mr. Dotson's RSD were limited to his left arm. The record contains no conflicting medical testimony.

Second, because RSD in one part of the body increases the risk that subsequent physical trauma will cause it to spread, Dr. Griffith has ruled out possible future surgery to correct Mr. Dotson's non-work-related lateral epicondylitis in his right elbow. However, there is no evidence that Mr. Dotson has exhausted conservative treatment options short of surgery for his lateral epicondylitis, and the mere potentiality that treatment options in Mr. Dotson's case might be foreclosed in the future is too speculative to be classified as a current injury.

Third, although Mr. Dotson suffers from permanent severe pain and hypersensitivity to touch in his left arm, the pain and hypersensitivity themselves have not spread beyond his arm. When a court determines the level of a workers' compensation award, the pain consequential to a single injury to a scheduled member alone may not itself be considered a separate, unscheduled injury. See

where claimant suffered from psychiatric condition); Janet L. Brooks v. Lear Seating Corp., No. 03S01-9702-CV-00024, 1998 WL 128960 (Tenn. Workers' Comp. Panel Mar. 23, 1998) (concluding that there was injury to the body as a whole where RSD in left knee was combined with psychiatric disorder and with injuries to the shoulders and hands).

Murray Ohio Mfg. Co. v. Yarber, 446 S.W.2d 256, 258 (Tenn. 1969) (holding that where scheduled member compensation has been specifically provided for by statute, "it must be assumed by this Court that the Legislature was then aware of the concomitant pain, suffering, [and so forth] normally attendant upon impact injury" and declining to treat leg pain consequent to a leg injury as a separate, unscheduled injury). To hold otherwise would permit a plaintiff "to sever or splinter concomitant difficulties of a single injury." Id. However, where injury to a scheduled member extends beyond the scheduled member, compensation for injury to the body as a whole may be appropriate. McWhirter v. Kimbro, 742 S.W.2d 255, 258–59 (Tenn. 1987). Mr. Dotson's pain and hypersensitivity do not give rise to body-as-a-whole compensation because they are limited to his left arm, a scheduled member.[5]

Fourth, Mr. Dotson has suffered secondarily from insomnia, chronic fatigue, and a diminished ability to concentrate. Although these sequelae may be factors to consider in determining vocational disability, see, e.g., Fagg v. Hutch Mfg. Co., 755 S.W.2d 446 (Tenn. 1988), as incidents of a scheduled injury already adjudged to be a total loss, they do not alter our classification or rating of Mr. Dotson's injury. We further note that Mr. Dotson has failed to prove the permanence of these sequelae by expert medical testimony. In all but the most obvious cases, permanency in workers' compensation cases must be established by expert medical testimony. Corcoran, 746 S.W.2d at 458; see Johnson v. Midwesco, Inc., 801 S.W.2d 804, 806 (Tenn. 1990).

## II. Conclusion

Reversing the trial court, we hold that a permanent disability award for reflex sympathetic dystrophy may be limited to the statutory compensation for scheduled members as provided in Tennessee Code Annotated section 50-6-207(3)(A) to (D) (1999). Further, we hold that for reflex sympathetic dystrophy to be properly apportioned to the body as a whole under Tennessee Code Annotated section 50-6-207(3)(F) (1999), the claimant's injury must affect a portion of the body not statutorily scheduled, affect a particular combination of members not statutorily provided for, or cause a permanent injury to an unscheduled portion of the body.

Having so held, we vacate the trial court's award of permanent total disability benefits to Mr. Dotson. We hold that because Mr. Dotson's injury is limited to his left arm as a scheduled member,

---

[5]We acknowledge the apparent anomaly of limiting RSD to scheduled member compensation when under another classification the condition's debilitating nature may well entitle the claimant to permanent total disability benefits. Cf. Ivey, 3 S.W.3d at 448 n.13 (questioning the fairness of treating "loss of mental faculties" as scheduled member compensation); Roberson v. Loretto Casket Co., 722 S.W.2d 380, 385 (Tenn. 1986) (acknowledging the arbitrariness of limiting compensation for loss of one eye to the statutory schedule when the entire visual field is necessarily affected). Notwithstanding, we must uphold and effectuate the statutory compensation scheme as it is provided by the legislature. Sullivan ex rel. Hightower v. Edwards Oil Co., 141 S.W.3d 544, 548 (Tenn. 2004).

his permanent disability award is limited exclusively to what Tennessee Code Annotated section 50-6-207(3)(A)(ii)(m) (1999) provides. In light of our determination that Mr. Dotson has no use of his left arm, we award him 200 weeks of permanent partial disability benefits. We remand this case to the trial court for further proceedings consistent with this opinion, as may be necessary. Costs are taxed one-half to the plaintiff, Mr. Dotson, and one-half to the defendants, Rice-Chrysler and the Hartford, for which execution may issue if necessary.

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE